Case No. 21-4136, Delante Lunn v. USA. Argument not to exceed 15 minutes per side. Mr. Robinson, you may proceed. May it please the Court, Emmett Robinson on behalf of Appellant Delante L. Lunn, I would like to reserve 5 minutes for rebuttal. The charges at issue in this case stem from Mr. Lunn's small-scale sale of drugs, but the extraordinary 25-year sentence he received stems from the jury's finding that the drugs Mr. Lunn sold to Sinead Dollar caused her death. That finding activated 21 U.S.C. Section 841B1C's 20-year minimum sentence requirement for drug sales in which death results. But Mr. Lunn's appointed trial counsel provided ineffective assistance with respect to this cause of death enhancement. So Mr. Lunn asks the Court to vacate application of that enhancement and remand the case to the District Court for resentencing. Cause of death was the central issue in the case. As this Court noted on direct appeal and as defense counsel admitted at the close of trial, the evidence that Mr. Lunn sold drugs to Ms. Dollar was very strong. In this Court's words, that evidence was overwhelming. But the evidence that the drugs killed Ms. Dollar was relatively speaking much less strong. The county coroner failed to perform an autopsy on Dollar. The heroin metabolite found in her blood sample was well within the standard therapeutic range. And the fentanyl level in her blood exceeded that range only by 10%. And this was so despite the fact universally acknowledged by all parties at trial that the phenomenon of So in other words, the concentrations of those drugs in Ms. Dollar's blood while she was alive would actually have been lower. Were all of these features that you're mentioning presented to the jury by the trial counsel? Yes, Your Honor. All three of these features were presented both by the government as well as by defense counsel. So what did the trial counsel do that was ineffective in terms of deficient performance that then could have resulted in prejudice? Sure. So trial counsel failed to put forth any affirmative evidence challenging cause of death. These issues are all tangential to cause of death. There was no testimony presented by any party, certainly not by the defense, that because, for example, these levels were not unusually high, it meant that Ms. Dollar's death was not caused by the drugs. Nor was there any testimony that because there was a lack of autopsy, the death was not caused by the drugs. So while there was evidence that could, as the government puts it in its briefs, the term eludes me now, but even the government won't say that the evidence put on by the defense contradicted their cause of death testimony, only that it ate at it around the edges. So there was no direct testimony, there was no direct evidence, there was no evidence whatsoever put on by the defense to refute Dr. Miller, the government's expert's cause of death testimony, that with certainty... There was an expert on behalf of the defendant, correct? That's right, Your Honor. It's just that that expert didn't say exactly what you now say he should have said. Well, not quite, Judge. So there was an expert, but there wasn't an expert, not that didn't say what I'd want him to say, but who could testify to the issue at all. There wasn't an expert who could even speculate as to her cause of death. If you look at the transcript, you know, the trial court had made clear that the expert would be barred from testifying on that topic, but... Because the expert that the defense lawyer hired was a pharmacologist as opposed to a pathologist. Is that the crux of it, that the wrong kind of expert was utilized? Yes, and it's not just the credential. The credentials aren't the issue. The issue is the substance, the topic, whether defense counsel retained an expert who was a more difficult case for the government, proving that Mr. Lund had sold the drugs, and say that a fingerprinting expert was brought in to say, no, his fingerprints are on this bag of drugs that were sold to Ms. Dowler, and say then that the defense brought in an opposing fingerprinting expert to say, no, no, these are the kinds of things that you can't do. There's no expert who can actually testify... Do you know that an expert was available that would have said what you would like for the defendant's expert to have said? Yes, we know that at least two were available, Judge. In our filings with the trial court, we submitted declarations from two forensic pathologists, the first two I talked to, frankly, who said, look, this is crazy. You can't determine cause of death without an autopsy in this case. And so both of them have said that you cannot rule drugs in or out, I believe was the language they said, without an autopsy in this case. And recall, of course, that all we need to do is prove, or put on proof that causes a death. We need an expert to say, look, there was no way that this girl died from these drugs here. And that's what precisely your sister circuit said in the Thomas B. Clemens case in the Seventh Circuit, when the issue there was whether the defendant had intended to kill the victim. There was no question that he killed her. The question was whether it was appeal. That was a state court case, so the standard was even more deferential. The court said it was enough that he had proffered an expert at the habeas stage who said it was impossible to tell from the record that the defendant had caused the death intentionally. Is there a difference between the Thomas case, which is a Seventh Circuit case, as you note, in that the trial counsel said he didn't think about hiring an expert, whereas we don't have such a statement here? That certainly is a difference, Judge, but I don't think it's a distinction that causes a different outcome. And that's because we know from the record, even though the trial court did not allow us to have a hearing and call appointed counsel to ask him his reasoning here, we know from the record that he intended to use the pharmacist, Mr. Bellato, as a cause of death expert. The government moved eight months prior to trial to exclude him as an expert on cause of death, and in the opposition to that, counsel confirmed that yes, indeed, they wanted to use him to testify directly on cause of death. Of course, the trial court ruled that that was not permissible. Even at trial, counsel again, defense counsel, sought to elicit testimony on cause of death from Mr. Bellato. So this wasn't a case where counsel made a reasoned decision that he had decided that it wasn't wise to use a cause of death expert. So did the trial counsel have the time and ability to find an expert after the trial court, the district court, gave its ruling on Bellato not being allowed to testify because he was a pharmacologist on the cause of death? So Dr. Bellato, I'm sorry if I mangled his name. No problem. So the motion to exclude was filed eight months prior to trial. It wasn't ruled on. I should have checked my notes last night, I think a couple of weeks before trial, but counsel was on very good notice that he was not going to be permitted to call Bellato because Judge Gahan, the chief judge up in the northern district, had ruled on the exact same expert on the exact same issue, cause of death, four months before that he was not permitted to testify as to cause of death in a fentanyl overdose case. So on all fours with this case. And in opposing the government's motion to exclude, defense counsel barely put up a fight, basically conceded the point. So he had eight months after that motion to find another expert and failed to do so. I would like to talk also, we've talked about some of this, but I would like to talk briefly before my time expires, what this case isn't about. So this isn't an expert parody case where we are arguing that Mr. Lund is entitled to numerical or Newtonian parody as the Supreme Court has said. The government called three experts and Mr. Lund doesn't argue he was entitled to three. This isn't a case either. Asserting that because the government called a forensic pathologist qualified to testify on cause of death, that Mr. Lund automatically had a right to his own forensic pathologist. Rather, the argument is that on these facts and in these circumstances, where the government's cause of death case was relatively weak, yet unrefuted, and where experts qualified to testify in Mr. Lund's favor were readily available, failure to retain an expert like that was ineffective assistance. And finally, I'd like to discuss briefly, I assume my time is up. I'm sorry, Judge. We'll hear you on rebuttal. Good morning, Your Honors. May it please the Court. My name is Jason Mannion and I represent the United States in this matter. I'd like to discuss two issues primarily and then try to respond to a couple points that my opposing counsel made. The first point is about, it goes both to the deficient performance prong and also the prejudice prong. The second point is about the evidence in this case, that whether the evidence was also overwhelming as to cause of death issues. And then a few minor points after that. So to start with, the Supreme Court has said that there are countless ways to provide effective assistance in any given case. And in a case like this, where you have, the decision's already been made that there is no autopsy. You now have a defense counsel who has to defend a client in that circumstance. There are maybe countless ways, but at least three that I'd like to talk about. One is demonstrated in Harrington v. Richter, the Supreme Court case, where the Supreme Court says when you're facing overwhelming evidence against a client, sometimes the best strategy can be not to hire an expert, not to transform a case into a battle of experts, and rather to focus on cross-examination and making the argument the government hasn't proved his case. Another possible route, and one that opposing counsel now wishes that Lund's trial counsel had taken, would be to hire a forensic pathologist. And United States v. Davis, which is a case that we discussed in our brief, illustrates that there are both pros and cons to doing that. One pro is you could have a forensic pathologist come in and say, there should have been an autopsy here, and the cause of death can't reliably be determined without one. And then the government would lose, right? If you couldn't decide the cause of death, then given that the government has the burden of proof, the government wouldn't be able to show that the decedent died from the overdose of fentanyl. The fact that a forensic pathologist would say that without an autopsy you can't determine cause of death  The government didn't lose in Davis, and there was an argument on appeal made that because there was no autopsy, a forensic pathologist should not be able to testify on cause of death, that this court rejected it. The Eighth Circuit just a month ago affirmed a case, a sufficiency challenge, where there's no autopsy. So it's certainly not true that because there's no autopsy the government can't prove cause of death. And the fact that a forensic pathologist might testify to that fact doesn't change that outcome. You could still, even if, as a matter of medical certainty, which is not a defined term, but even if a forensic pathologist said they could not determine as a matter of medical certainty what the cause of death was on those facts, a jury can still make that determination as a matter of legal certainty. And what happened in US v. Davis is you had a forensic pathologist come in, and you said all the things that opposing counsel has presented declarations to say that a forensic pathologist could have said in this case, that you need to have an autopsy, that without an autopsy you can't reliably determine cause of death, and that even it's a violation of professional standards not to do so. But then on cross-examination the government said, fine, we don't have an autopsy here, what is the most likely cause of death? And the defense's own expert, a forensic pathologist, said, looking at all these facts, the most likely cause of death was a mixed drug overdose. And that's something the government in that case used several times in closing argument to point out, even the defense's own expert facing the same facts that the forensic pathologist in this case faced, or sorry, in Davis' case faced, that even the defense's expert said the most likely cause of death was a mixed drug overdose. And what did the prosecution's witness say? Say that the most likely cause of death was a mixed drug overdose? Is that what the prosecution's? In Davis or in this case? In this case. In this case, I mean, yes, the forensic pathologist said that based on his review of all the facts, which was not merely the toxicology results, although those came into play, it included also the scene, Shanie Dowler's age, only 25 years old, her lack of medical history that suggested any other plausible medical condition that could have caused her death, the fact that drugs were open and next to her, the fact that there was testimony that she had been clean for a long time, she was in an outpatient treatment program, and that when people go off of drugs for a while, they lose their tolerance, if they come back to taking drugs again, if they take it at the same dosage they had before, that can be lethal. Also, if they think they're taking heroin and instead they're taking heroin and fentanyl, that can be lethal because fentanyl is 75 to 200 times as potent. And in this case, we have Facebook messages where after she picked up the drugs the night before from Delonte Lund, she messaged him and said, this was H, right? He says yes, and it wasn't, it wasn't simply heroin, it was fentanyl as well. So all of this evidence was there that made it overwhelming, but I do want to quickly point out that the other approach, you could not hire an expert, you could hire a forensic pathologist, but subject them to the risk of cross-examination and having to admit what the forensic pathologist in Davis admitted. The other approach is to hire an expert like they hired here. Dr. Bellotto wasn't disqualified from testifying about all cause of death issues. He was only prohibited from giving his own opinion about what actually caused the death. So he did testify about post-mortem redistribution. He testified about why he viewed the therapeutic ranges in this case to not be a reliable way to determine whether someone had taken a lethal dose. He testified that a dose over a three was not considered a lethal dose in the scientific community. He testified about other causes of death, that it could have been. He testified that- He could testify that there could be other causes of death, he just couldn't testify specifically what the cause of death was here. That's right. He also testified that there hadn't been an autopsy, and without an autopsy you wouldn't be able to determine at least a couple of the medical conditions that counsel has in their declarations. So many of these issues, as the district court noted, were in front of the jury, thanks to the fact that he hired an expert qualified enough to testify about most of these issues. The thing that he wasn't qualified to do to testify about what he thought the cause of death was also meant the government couldn't cross-examine him at that point. And a competent counsel looking at these options, looking at the pros and cons of each option, could determine that not having extra testimony about why there wasn't an autopsy, not having extra authority to the idea that it should have been, was worth also not subjecting his own expert to cross-examination on that point. So this question may be broader than this case, but why wouldn't we benefit from a statement from the trial counsel as to what their theory was, as to why they didn't call a pathology expert? So I think there's a couple answers to that question. The first is, although counsel in his reply brief and now says the district court wrongfully denied him an evidentiary hearing, he did not apply for a certificate of appealability on that issue. This court didn't grant one on that. He didn't raise that in his opening brief on appeal either. But also the lack of evidence is something, it is the petitioner's, in this case, burden to show evidence. Dunvey Reeves, the Supreme Court case from 2021, talks extensively about this in the expert hiring context. And when defense counsel fails to present evidence to rebut the presumption that what counsel did, in this case, was a strategic decision, they've failed their burden. And I will note he presented over 100 pages of documentary evidence to the district court. He had other declarations. He had supporting documents for those declarations. He didn't present any evidence from trial counsel. But again, speaking broadly, not necessarily tied to the facts of this case, isn't that putting the new trial counsel on a 2255 at a total disadvantage if the initial trial counsel did not want to admit that they had utterly failed to hire the right person, using this as a hypothetical as opposed to the facts of this case? Yeah, I think having that, if he could have gotten that evidence, that would help his case tremendously. I think even though Thomas B. Clements isn't a case that is... But wouldn't a trial counsel normally say, I don't want to be called ineffective, and therefore, yeah, it was trial strategy, and therefore doom a defendant's 2255, even if the trial counsel had actually not even thought and had been in the situation of Thomas? So it's certainly not the case that trial counsel never would admit to being ineffective. That does happen in ineffective assistance, not in all for sure. And it's probably true that without the ability to compel testimony on this, there is a disadvantage. But again, that's not something he raised as an error. He mentioned that there was no hearing. He didn't raise that as an error in his application for a certificate of appealability. He didn't raise it in his opening brief as an error. He waited until the reply brief and a footnote to say that if the court found the evidence not to be sufficient, it should reverse and send it back for an evidentiary hearing. But that's a forfeited argument because it was raised so late in the process. And so I think, you know, I do want to briefly talk about the categories of evidence that go directly to the cause of death. There were five categories of evidence that showed that the drugs were the most likely cause of death in this instance. The first is the toxicological evidence. There were three substances in Shani Dollar's blood. Only one was above therapeutic range. That was fentanyl. The only source of fentanyl, the only drugs in the room that contained fentanyl were the drugs right next to her body that matched, according to her half-sister who had driven her to pick up these drugs, the drugs that she had received from Delonte Long the night before. But the fentanyl was not that much in excess of the, what do you call it, the therapeutic level? Right. So it was the only one above. It was not much above. And that's something that trial counsel in this case did an effective job of raising to the jury, both through cost examination and through his own expert. But there was testimony in the case that lower levels can kill someone who's lost their tolerance because they've been off drugs, which we know that Shani Dollar was in this case. And also that when you have multiple drugs in your system, the fact that any one of them isn't at or isn't much above lethal levels doesn't mean that that's not what caused her death. When they have multiple drugs in their system, and she did have breakdown components of heroin and also Xanax in her blood, that the mixture can be the cause of death. Here there was significant testimony that the heroin being above the therapeutic range made it the lead suspect in the death. It was the only one above therapeutic. So heroin. I'm sorry, fentanyl. But additionally, there was the strong circumstantial evidence that she had died from drugs. That included the fact that she was only 25 years old, that there were no medical history of health conditions that would have caused a sudden death, such as heart disease or lung disease. When her body was found, it had fluids coming out of her nose, which the testimony was a very common sign of an overdose, that she had a medical history of having overdosed before. There was no explanation of, or no evidence that she had died from anything else. There was no evidence. Did the government just have to prove that she died of an overdose of the drugs that were supplied by the defendant? Or did the government have to prove that it was a particular drug that had caused the overdose? It is now clear in the Sixth Circuit that you have to prove that the drugs that were distributed by the defendant were a but-for cause of the death. So it doesn't have to be a sole cause. It doesn't have to be a proximate cause. There was, at the time, some legal uncertainty about that. Some of the judges in the Northern District of Ohio held that proximate cause was also necessary. That was something that trial counsel in this case had tried to present to the judge, tried to present on appeal, later tried to present to the Supreme Court on direct appeal, that proximate cause should have been required as well. And counsel followed the strategy of pointing to other things that could have been proximate causes of the death and provided effective assistance in that way too. But one other category of evidence I want to hit right here at the end is Delonte Lund's own evidence of awareness of guilt. So as soon as he learned that she had died, he dialed her phone twice to see if that was right. But before doing that, he dialed 667 to hide his number on those calls. He had never done that before in the records that the government had access to on his phone. He then changed his number three days later. He went in, he blocked her on Facebook, he removed her as a friend. He deleted all the messages between himself and Ms. Dowler, including the messages about the fact that he had sold her drugs the night before. He then began coordinating a cover story with her half-sister that they had gone somewhere else to pick up drugs. He called her just constantly over the following weeks to ask about the progress of the investigation. And so there was significant evidence in this case that he had distributed drugs, the only drugs that contained fentanyl, to her the night before. He showed strong awareness of guilt. All of this was before the jury and in part thanks to the good work of trial counsel. And so we think he provided effective assistance. Thank you. Thank you. Thank you, Your Honors. Counsel says that there are countless ways to provide effective assistance, and I absolutely agree with that in the abstract. He also says that my position now, or Mr. Lund's position rather, is that he wishes that counsel had taken a different route. But that's not true. We know what route counsel decided to take. Counsel decided that he wanted to retain an expert qualified to testify on cause of death. He said that in his briefing. He tried to get in testimony on cause of death from this expert at trial, but because of his ineffectiveness, because of his incompetence, he failed. How do we know, given the fact that there was not an autopsy, what certainty is there that a different kind of expert would have given an opinion as to the cause of death? There is no certainty, Judge. That's precisely the point. Well, I mean, isn't it rather speculative to say if he'd done something different, then we would have had evidence of a cause of death? I mean, a different kind of expert would have been permitted to testify? Well, on what basis would another expert have been able to testify, factually? Well, respectfully, Judge, remember that we're the defendants here, and so they bear the burden of proof beyond a reasonable doubt. So our experts would call into question the government's unequivocal testimony that they knew for certain that these drugs caused Ms. Dollar's death. That's what Dr. Miller, the government's expert, said repeatedly, unequivocally, on direct and on cross, and we had no way to rebut that. When counsel tried to do it on cross, he was swatted down every time. Could it have been pneumonia? Yeah, but if it was pneumonia, the drugs would have been a but-for cause too. Every single time, it only reinforced that conclusion. So we know what route was taken, and we know that it was because of incompetence, because failure to retain the correct expert that counsel provided ineffective assistance. That is another reason why Davis does not square with this case. Another issue in Davis is that the expert there, the defense expert, testified that it was his hunch, his hunch that drugs likely caused the death. Well, I can guarantee here that our experts, if you look at their declarations, would not testify as to hunches. They're medical experts who testify to a reasonable degree of medical certainty, and they have declared that they cannot rule drugs in or out here, and that's all we need is a reasonable doubt. There was nothing here to assail the unequivocal testimony of Dr. Miller that, yes, with certainty, these drugs killed Ms. Dollar. I wanted to mention, too, the government's assertion that Dr. – it's hard to know how to refer to him because he has a Ph.D. in pharmacokinetics, so he's not a medical doctor, but he does have a terminal degree. But anyway, that he was able to testify as the cause of death, even on the edges. But that isn't true. So, for example, at page 525 of the transcript, tried to tease some stuff out, said, asked Dr. Bellotto, would her appearance be consistent with pneumonia? His answer, it could be. Anyone could say that. A layperson could say that. And, in fact, he was testifying as a layperson in that moment. And when they did try to get the cause of death, I urged the court to review the transcript because you'll see that Mr. Bellotto was not, not at any time, permitted to testify as to Ms. Dollar's cause of death. So the defense counsel asked, the county coroner who testified here that Ms. Dollar had passed away from a mixed drug overdose, you don't disagree with that finding, do you? And Bellotto answered, it's a possibility, but there are other. Objection, Your Honor. Objection sustained. Is there anything you want to add to that, Doctor? Objection, Your Honor, sustained. That's at 528 and 529 of the transcript. And the government was clear on this at the trial court. In the closing, the government emphasized, hammered home, that the cause of death testimony and evidence was unrefuted, undisputed, unchallenged by the defense. I wanted to mention briefly, if I could, the categories of evidence that my friend mentions support the cause of death position of the government, but you'll find if you look at those that none of those support cause of death. They only support the notion that Mr. Lund supplied the drugs, which we don't contest, that fentanyl was a lead cause. It's not relevant to that. Strong awareness of guilt. He points out to the fact that Mr. Lund tried to erase the Facebook friendship, tried to star whatever number it was to erase the call record. That shows evidence that he knew he sold the drugs. Not evidence of guilt. He's not a forensic pathologist. He had no way to determine cause of death. Thank you. Thank you. Thank you both for the argument. The case will be submitted.